UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| OLIVER LAQURON MATTHEWS, | ) | Case No. CV 13-4878-AJW |
| | ) | |
| Petitioner, | ) | |
| | ) | MEMORANDUM AND ORDER |
| v. | ) | DENYING PETITION |
| | ) | |
| AMY MILLER, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| ──────────────────────── | ) | |

## Background

At approximately 10:00 a.m. on August 6, 2008, Deputy Sheriff Roland De La Maza and his partner Deputy Sheriff Jennifer Harris were on patrol. When they stopped at an intersection, the officers ran the license plate of the Nissan Altima stopped in front of them, using the Mobile Digital Terminal ("MDT") in their patrol car. De La Maza routinely checked the plate information of random vehicles on the MDT system. According to the MDT, the car's registration expired in September 2008. The stickers on the license plate, however, indicated that the registration expired at the end of August 2008. [Reporter's

1   Transcript on Appeal ("RT") B6-B11, B21-B24, 621-624].[1]

2       Although the license plate was assigned to the same type of car

3   – that is, a Nissan Altima – De La Maza believed that based upon the

4   discrepancy between the information in the MDT and the license plate

5   sticker, it was possible that either the sticker or the license plate

6   had been illegally switched to make it appear that the car's

7   registration was current.  In addition, he knew that sometimes stolen

8   vehicles used license plates from other vehicles of the same type.  De

9   La Maza believed that there was a problem with the license plate, and

10  a possible violation of section 5204(a) of the California Vehicle

11  Code.  In order to confirm that the license plate belonged to the

12  Nissan, De La Maza and Harris conducted a traffic stop.  [RT B11-B12,

13  B21-B22, B24-B29, B35-B38].

14      Petitioner, who was alone in the car, pulled over.  De La Maza

15  asked petitioner for his license, registration, and proof of

16  insurance.  He intended to use the registration to ascertain whether

17  the car was properly registered.  Petitioner began to "scramble" for

18  the documents in the glove compartment.  Then he told the officers

19  that he was headed to the Department of Motor Vehicles ("DMV") because

20  his license had been suspended.  Driving with a suspended license is

21  a misdemeanor, so petitioner was subject to arrest.  [RT B12-B14, B30-

22  B31, B36, B38, B48, 624, 630].

23      De La Maza asked petitioner to step out of the car.  When

24  petitioner did so, De La Maza noticed a plastic baggie containing

25  small bindles of aluminum foil in petitioner's left hand.  It appeared

26  to De La Maza that petitioner was going to toss the baggie.  Based

27

28          [1]  Some of the following facts are based upon the evidence
        presented during the hearing on petitioner's motion to suppress.

upon the packaging, De La Maza suspected that the baggie contained some kind of narcotic.  Petitioner spontaneously said, "That's me and my friend's for personal use."  Upon further inspection, the baggie contained 39 bindles of rock cocaine, each wrapped in aluminum foil, for a total of 19.7 grams of rock cocaine. [RT 625-630, 905-908].[2]

After the officers confirmed that the car would be towed because petitioner was driving with a suspended license, Harris conducted an inventory search of the car.  She found $620 in cash, two cellular telephones, and some aluminum foil. [RT B16-B17, B40-B42, B46, B62-B63, 639-641].

Kylie Roberson, the registered owner of the Nissan Altima, testified that she purchased the car new on August 31, 2005. Subsequently, she received the license plate with expiration stickers of August 2006.  The registration document she received from the DMV, however, stated that the registration period expired on September 2, 2006.  After the incident with petitioner occurred, Roberson brought the registration disparity to the attention of the DMV, and she was given a September sticker to replace the August one.  [RT B53-B56, B60-B61].

Petitioner testified in his own defense.  He said that the night before he was arrested, he received a call from his friend, "Wolfie," who said that he could get an ounce of rock cocaine for $450 instead of the usual amount of $900.  Petitioner offered to pay $325, and his friend agreed.  Petitioner bought the cocaine for himself and his friend, who got high every day after work.  Petitioner testified that he could smoke 10 of the rocks in one day, or about four grams a day

---

[2]   Detective Skikas testified that in his opinion that the 39 bindles were for sale. [RT 648-649].

if each bindle was .4 grams.[3] [RT 918-922].

Petitioner explained that on the day he was arrested, he had used his roommate's car to go to the DMV to pay for a ticket in order to get his license back.  When the deputies pulled him over, petitioner was looking for the registration because he did not know where his roommate kept it.  He did not tell De La Maza that he was on his way to the DMV to clear up a suspended license.  He told De La Maza that the cocaine was for personal use and that after he went to the DMV, he intended to meet his friend Lance and share the drugs with him.  Petitioner testified that he did not intend to sell the drugs.  He had a job in an in-home care facility that allowed him to support his cocaine habit without selling drugs.  [RT 923-929, 938, 942].

Petitioner was convicted of transportation of a controlled substance.  In a separate proceeding, the trial court found true the allegations that petitioner had suffered a prior "strike" conviction, had suffered two prior felony convictions related to controlled substances, had served five prior prison terms, and was on bail at the time he committed the current offense.  Petitioner was sentenced to state prison for a term of 16 years. [Clerk's Transcript ("CT") 162-166, 223-226; RT 2426-2427].

Petitioner appealed to the California Court of Appeal and simultaneously filed a petition for a writ of habeas corpus in that court.  On June 28, 2012, the California Court of Appeal affirmed the conviction and summarily denied the habeas petition. [Lodged Documents ("LDs") 3, 6-8].  On September 12, 2012, the California Supreme Court

---

[3]  Detective Skikas noted that people have different tolerances for cocaine base.  He testified that it was possible for two people to consume six grams a day, or 18 grams over the course of three days. [RT 653-658].

1  denied petitioner's petitions for review. [LDs 9-12].

2  <center>**Petitioner's contentions**</center>

3  Petitioner raises the following claims for relief:

4  1.   The traffic stop violated petitioner's Fourth Amendment
5  right to be free from unreasonable search and seizure. [Petition at 5;
6  Memorandum of Points and Authorities in Support of Petition
7  ("Petitioner's Memorandum") at 1-2].

8  2.   The evidence obtained as a result of the illegal search and
9  seizure "must be suppressed." [Petition at 5; Petitioner's Memorandum
10  at 2].

11  3.   Petitioner was deprived of the effective assistance of
12  counsel during the suppression hearing. [Petition at 5-6; Petitioner's
13  Memorandum at 4-6].

14  <center>**Standard of Review**</center>

15  A federal court may not grant a writ of habeas corpus on behalf
16  of a person in state custody

17      with respect to any claim that was adjudicated on the merits
18      in State court proceedings unless the adjudication of the
19      claim (1) resulted in a decision that was contrary to, or
20      involved an unreasonable application of, clearly established
21      Federal law, as determined by the Supreme Court of the
22      United States; or (2) resulted in a decision that was based
23      on an unreasonable determination of the facts in light of
24      the evidence presented in the State court proceeding.

25  28 U.S.C. § 2254(d).

26  As used in section 2254(d), the phrase "clearly established
27  federal law" means "holdings of the Supreme Court at the time of the
28  state court decision." <u>Stanley v. Cullen</u>, 633 F.3d 852, 859 (9th Cir.

<center>5</center>

2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Although only Supreme Court law is binding, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)); see Marshall v. Rodgers, 133 S.Ct. 1446, 1450-1451 (2013) (per curiam) ("Although an appellate panel may ... look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, ... it may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct.").

Under section 2254(d)(1), a state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" about the correctness of the state court's decision. Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). This is true even where a state court's decision is unaccompanied by an explanation. In such cases, the petitioner must show that "there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

Under section 2254(d)(2), relief is warranted only when a state court decision based on a factual determination is "objectively unreasonable in light of the evidence presented in the state-court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1    Finally, state court findings of fact – including a factual

2  summary included in a state appellate court opinion – are presumed to

3  be correct unless petitioner rebuts that presumption by clear and

4  convincing evidence.  28 U.S.C. § 2254(e)(1); <u>see</u> <u>Slovik v. Yates</u>, 556

5  F.3d 747, 749 n. 1 (9th Cir. 2009); <u>Moses v. Payne</u>, 555 F.3d 742, 746

6  n. 1 (9th Cir. 2009).

7                              **Discussion**

8      **1.  Grounds one and two are foreclosed by <u>Stone v. Powell</u>**

9      Petitioner alleges that the traffic stop violated the Fourth

10 Amendment and that the evidence seized during the illegal search

11 should have been suppressed. [Petition at 5; Petitioner's Memorandum

12 at 1-3].

13     The Supreme Court has made clear that "where the state has

14 provided an opportunity for full and fair litigation of a Fourth

15 Amendment claim, a state prisoner may not be granted federal habeas

16 corpus relief on the ground that evidence obtained in an

17 unconstitutional search or seizure was introduced at his trial."

18 <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976).  Thus, so long as

19 California provided petitioner the opportunity for full and fair

20 litigation of his claim, federal habeas relief is unavailable.  <u>See</u>

21 <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 899 (9th Cir. 1996) (explaining

22 that the relevant inquiry is whether the petitioner had the

23 opportunity to litigate his Fourth Amendment claim, not whether the

24 claim was decided correctly).

25     At trial, petitioner's counsel filed a motion to suppress the

26 evidence based upon an alleged Fourth Amendment violation.  [CT 24-

27 30]. <u>See</u> Cal.Penal Code § 1538.5.  The trial court conducted a hearing

28 on the motion, at which both De La Maza and Roberson testified, and

the trial court heard argument on the motion. [RT B1-B71].  The trial court found that De La Maza performed a routine random license plate check, discovered a discrepancy between the tag on the car and the expiration date from the computer records, and had a reasonable suspicion of a violation of section 5204(a) of the California Vehicle Code as well as the possibility of other crimes.  Thus, the stop was justified.  Next, after petitioner stated that he was driving with a suspended license, De La Maza had justification to arrest petitioner for a misdemeanor.  Thus, his request that petitioner step out of the car was lawful.  As the trial court determined, the aluminum foil bindles, as well as petitioner's attempt to discard the baggie containing drugs, created further reasonable suspicion.  In addition, once the baggie was in plain view, its seizure was justified.  The search of the car was justified as both an inventory search because the car was to be towed and by petitioner's arrest.  Based upon these findings, the trial court concluded that the search and seizure were lawful, and denied the motion to suppress.  [RT B72-B 76].

The California Court of Appeal also considered the merits of petitioner's Fourth Amendment claim and denied it in a reasoned opinion. [LD 6 at 4-8].  The appellate court agreed with the trial court's conclusion that the initial stop was authorized by the discrepancy between the license plate tags and the computer registration information, and that the subsequent arrest and seizure of the cocaine bindles was justified by petitioner's revelation that he was driving with a suspended license and by De La Maza's observation of the baggie when he asked petitioner to exit the car. [LD 6 at 8].

Because the state provided petitioner the opportunity for a full and fair litigation of his Fourth Amendment claim, federal habeas relief is not available on that claim. See Moormann v. Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005) ("If the state has provided a state prisoner an opportunity for full and fair litigation of his Fourth Amendment claim, we cannot grant federal habeas relief on the Fourth Amendment issue.") (citing Stone, 428 U.S. at 494), cert. denied, 548 U.S. 927 (2006); Villafeurte v. Stewart, 111 F.3d 616, 627 (9th Cir. 1997) (same), cert. denied, 522 U.S. 1079 (1998).

**2.   Ineffective assistance of counsel**

Petitioner alleges that he was denied the effective assistance of counsel at the suppression hearing. [Petition at 5-6; Petitioner's Memorandum at 4-6]. The facts relevant to his claim are as follows.

During the suppression hearing, the prosecution relied upon a two-page print-out reflecting information that may have been displayed to the officers on the MDT in their patrol car in order to refresh De La Maza's recollection as to the time of the stop. The document was marked, "People's Exhibit 1" for identification only, and was not admitted as evidence. [RT B9-B10, B63].

As set forth above, De La Maza testified that the MDT information stated that the registration was valid through September 2008. [B10]. The license plate sticker, however, indicated that the registration expired "August of 2008." [RT B10]. De La Maza answered affirmatively to the prosecutor's query whether "the information you had was the vehicle registration was good until September of '08; is that correct?" [RT B11].

On cross-examination, De La Maza confirmed that he stopped the car based upon "the fact that the return on the plate showed on my

computer as expiring in September of '08, and the tags displayed on the vehicle license plate were showing expired as of August of '08." RT B24]. De La Maza agreed that "an August tag doesn't expire until the end of August." [RT B23].

Petitioner's counsel called Roberson to testify at the suppression hearing. She confirmed that the sticker on the license plate was incorrect. Copies of her registration, which showed the expiration date as September 2, 2008, were admitted into evidence. [RT B53-B56, B60-B61].

Petitioner argues that trial counsel should have admitted into evidence the two-page print-out showing the September 2, 2008 date. According to petitioner, the September 2, 2008 date was "exculpatory evidence" that was "crucial to [petitioner's] claim that the officer did not have a reasonable suspicion that a crime had occurred, or was occurring, when he made the traffic stop." [Petitioner's Memorandum at 5].

The Sixth Amendment guarantees that a criminal defendant will not be convicted without the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-686 (1984). In order to establish ineffective assistance of counsel, petitioner must identify the acts or omissions of counsel that were not the result of reasonable professional judgment, and he must show a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 690, 694; see also Knowles v. Mirzayance, 556 U.S. 111, 123, 127 (2009). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Knowles, 556 U.S. at 127.

1   Where a state court has adjudicated an ineffective assistance of
2   counsel claim on the merits,[4] a habeas court's review of a claim under
3   the Strickland standard is "doubly" deferential.  Richter, 131 S.Ct.
4   at 788; Knowles, 556 U.S. at 123.  The relevant question "is not
5   whether a federal court believes the state court's determination under
6   the Strickland standard was incorrect but whether that determination
7   was unreasonable - a substantially higher threshold."  Knowles, 556
8   U.S. at 123 (citations omitted).

9   Petitioner's claim fails because he has not shown that admitting
10  the print-out into evidence would have rendered his motion to suppress
11  meritorious.  Petitioner does not explain, and it is not clear, how
12  the admission of the print-out would have altered the trial court's
13  analysis of the lawfulness of the traffic stop. As the trial court
14  explained, De La Maza's decision to stop petitioner was based upon a
15  discrepancy between the MDT information - which he characterized as
16  indicating the registration was good "through September, 2008" - and
17  the stickers on the license plate - which indicated that the
18  registration was good through August, 2008.  This discrepancy exists
19  even if there was evidence that the registration expired on September
20  2, 2008.  Either way, De La Maza was presented with an apparent
21  violation of the vehicle code that the trial court concluded justified
22  the traffic stop.

23  Furthermore, the trial court was aware that the registration
24  expired on September 2, 2008, based upon evidence presented by
25  petitioner. [RT B54-B56, B60-B61].  Thus, the evidence which

26
27      4   The California Court of Appeal rejected petitioner's claim
28  without explanation. [LD 8].  That decision is deemed to be "on the
    merits."  Richter, 131 S.Ct. at 784-785.

petitioner complains that his trial counsel should have admitted was cumulative.

Because petitioner has not shown that his motion to suppress would have been meritorious if trial counsel had sought to admit evidence of the two-page print-out, he has not demonstrated that his trial counsel provided deficient performance in failing to do so.  Nor has petitioner shown that trial counsel's allegedly deficient performance prejudiced the defense.  See James v. Borg, 24 F.3d 20, 27 (9th Cir.) (the failure to make a futile motion does not constitute ineffective assistance of counsel), cert. denied, 513 U.S. 935 (1994).  Therefore, the Court cannot say that the state court's determination of petitioner's claim was either contrary to, or an unreasonable application of, federal law.

### Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

It is so ordered.

Dated: November 14, 2013

Andrew J. Wistrich
United States Magistrate Judge